IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TOREY CORTEZ SMITH                                                              PLAINTIFF

VS.                                                           CIVIL ACTION NO. 3:17-cv-629-FKB

MANAGEMENT AND TRAINING
CORPORATION, SERGEANT
UNKNOWN TRAYLOR, FRANK
SHAW, UNKNOWN WALKER, and
CAPTAIN UNKNOWN BRIDGES                                                       DEFENDANTS

**ORDER**

This case is before the Court on Defendants' Motion for Summary Judgment [65]. Plaintiff Torey Cortez Smith brings this suit pursuant to 42 U.S.C. § 1983. He is proceeding *in forma pauperis* and *pro se*. He alleges that in May 2017 officials at East Mississippi Correctional Facility ("EMCF") failed to protect him from an inmate assault, used excessive force against him, and incorrectly found him guilty of a facility rule violation. For the following reasons, the Court finds that the motion should be granted in part and denied in part.

**I. Factual Allegations**

Smith's complaint concerns two incidents in May 2017. First, he alleges that Officer Jidarron Walker failed to protect him from an assault by another inmate. On or about May 14, 2017, Smith complained to EMCF officials that another inmate, Dewayne Hoskins,[1] had sexually harassed him. [65-1] at 6-7, 33. EMCF officials transferred Hoskins to a different pod within the unit. *Id.* at 7, 33. On or about May 15, 2017, the facility's barber visited Smith's unit, resulting in increased inmate traffic to and from the area. *Id.* at 7-8, 34-35. During this time, Hoskins reentered

---

[1] Documents produced by Defendants reflect that the inmate's actual name is Deiaire Haskins. [65-6]. However, the Court will use the name Dewayne Hoskins for the purpose of consistency with questioning and testimony at the omnibus hearing.

Smith's unit. Smith began trying to get Officer Walker's attention to let him know that Hoskins was not supposed to be there. *Id.* at 9. However, before officers could intervene, Hoskins punched Smith in the face. *Id.* at 12. According to Smith, Hoskins then pulled out a knife. *Id.* at 36. At that point, another EMCF staff member, Sergeant Dukes "charged [Hoskins], literally ran on the zone and tried to take him down on the ground." *Id.*

According to EMCF medical records, Smith reported being punched in the lower right jaw. [65-2] at 3. He did not require any medical treatment. *Id.*

At an omnibus hearing held on July 2, 2018, Smith testified that Officer Walker did not normally on Smith's unit; he usually worked on the "high risk" unit. *Id.* at 8. Smith further testified that because it was "barbershop day," it was "extremely busy" in the unit, and "traffic [was] extremely constant . . . even with employees and inmates." *Id.* at 8, 34. As to why he believed Officer Walker let Hoskins on the zone, Smith testified as follows:

> So my understanding - - my belief, just be honest with you, I believe that because [Hoskins] was on the unit prior, probably less than 24 hours [before], I believe Officer Walker mist[ook] him to be still housed on that unit, because he had just left out of that zone that - - you know, the day before or two days before or a day before.
>
> So I - - and my - - my belief, I believe that Officer Walker assumed that he was still on there until the facts came out. He was like, 'Oh, my gosh,' you know, like he [was not] supposed to be there.

*Id.* at 35. Counsel for Defendants then asked whether Smith believed Officer Walker inadvertently let Hoskins onto the zone. Smith responded,

> I think he - - it can be either or. Either or. If you want me to be specific, I'll say yes, I believe that he intentionally let him on the zone. If you want me to be sympathy with him, I believe that he did not recognize that he was housed on 1 Bravo. So I don't know his - - I don't know his mindset, you know.

*Id.*

2

The second incident at issue took place on May 31, 2017. Smith alleges Sgt. Lonnie Traylor used excessive force against him. In the grievance he filed with EMCF, Smith described the incident as follows:

> I was trying to explain to Sergeant Traylor that I had a problem [being housed] on Housing Unit 1B. We stood in front of the zone door. He stated to me to move from the door and deal with it shortly. He advised Officer Jenkins to give him the radio. He stuck me in my side. I stated to this sergeant why you doing this. He said explain to the next shift. When I refuse[] to move from the door, he pulled me in the hallway and threw me onto the floor. While I was on the floor, he choked me. I was gagging for air. Well, I was given an RVR for refusing housing. It's not right for this type of action. If my safety was at stake, why should I be subject to an RVR. Then after I explain to the nurse what had happened, he then replied "well I'm giving you a B8." I did nothing toward this officer. He wronged me totally.

[5] at 3. Traylor's version of the event, as described in his incident report, is as follows:

> On May 31, 2017, at approx. 0520 hrs, Sgt. Traylor was conducting rounds and unlocking offender cells on Housing Unit 1 Bravo. When Sgt. Traylor was exiting Bravo Pod, Offender Torey Smith #136527 stuck his foot in the door and attempted to push pas[t] Sgt. Traylor and exit the zone. Sgt. Traylor ordered Offender Smith to stop his actions and also asked him what the problem was. Offender Smith stated that he was coming out the zone no matter what Sgt. Traylor said. Sgt. Traylor ordered the offender several times to stop trying to push pas[t] him. Offender Smith continued to refuse[] Sgt. Traylor['s] orders. At that time, Sgt. Traylor us[ed] soft empty hand techniques[,] placed Offender Smith on the floor and called for Lt. Brown and Lt. Smith for assistance. Offender was placed in restraints and taken to medical for a body sheet. All chains of command were notified via email and all paperwork was completed.

[65-3] at 1.

Smith admits that he instigated the contact with Traylor. According to Smith, Hoskins was still housed on Unit 1 at the end of May, even though he had been moved from Unit 1 B (where Smith was) to Unit 1 A. Smith wanted to move, but had been unsuccessful in his efforts to change units. He testified,

> I actually had to go to the captain - - I had to go all the way out, to like literally force myself out of the door of the zone to get the lieutenants and captains

> that was over that shift to respond, because when you get in the - - you kind of aggressive a little bit, the lieutenants and captains have to respond.
>
> So they responded. And I was moved, but I was given a refusing housing RVR because of that issue.

*Id.* at 14. He further testified that "I did not assault [Traylor]. I was more resisting to get out that door than I assaulted him." *Id.* at 15.

Smith was taken for medical evaluation following the incident. His patient records contain a narrative summary by Smith of what he says occurred. He stated,

> I was standing with my foot propping the door open approximately 0535 and had been talking to Officer Jenkins to discuss a security issue, that's when Sergeant Traylor advised me to step back and I said I need to talk to you, he asked me to step back again then he asked Officer Jenkins for the radio and he did a 360 and he poked my lower right side with the antenna. Then I fell to the ground… No, he threw me to the ground. He tried to choke[] me and grabbed my chest."

[65-2] at 8-9 (ellipses in original). The medical records state, "Injuries reported, but no sign or symptom of injury noted. No bruising, redness, cuts, or edema noted." *Id.* at 9. Smith disputes this. He alleges that he was "referred to the physician for . . . x-ray[s]," "treated for [his] side]," and given muscle relaxers and pain pills. [65-1] at 26.

As to the remaining three defendants, Smith alleges that Captain Bridges was the supervisor on duty at the time of the May 31, 2017, incident. *Id.* at 27. Bridges also affirmed the RVR that Traylor issued Smith relating to the May 31, 2017, incident for refusing his housing assignment. *Id.* at 28. He testified that Frank Shaw was the warden of EMCF at the time and that "he does not like Torey Smith." *Id.* at 15-16. He further testified that he is suing Shaw because he did not discipline Officer Walker. *Id.* at 16. As to Management & Training Corporation ("MTC"), Smith testified that he was suing it because it employed Walker, Officer Nicholas, and Officer

4

Traylor." *Id.* at 31-32. He clarified that he was suing MTC for no other reason than because it is responsible for the officers' conduct. *Id.* at 32.

## II. Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th ir.), *cert. denied*, 525 U.S. 1054, (1998)). Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*)(emphasis omitted). Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

## III. Analysis

The Court first addresses Smith's claim against Officer Walker. "An official is deliberately indifferent when he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Armstrong v. Price*, 190 F. App'x 350, 352 (5th Cir. 2006). The deliberate indifference standard is "an extremely high standard to

meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A prison official's mere negligence in failing to protect a prisoner is not actionable. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference …" *Estate of Davis ex.rel. McCully v. City of N. Richlan Hills*, 406 F.3d 375, 379 (5th Cir.2005). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Smith has failed to show that Walker knew of and disregarded an excessive risk to Smith's health posed by Hoskins. Smith has failed to show that Walker was aware of any facts that would lead him to believe that Hoskins posed a substantial risk of harm to Smith. Moreover, even Smith testified that Walker likely did not know Hoskins had been moved to a different pod. At most, Smith can show that Walker's allowance of Hoskins into the pod was mere negligence. Such is insufficient to establish a claim under 42 U.S.C. § 1983. Accordingly, Walker is entitled to summary judgment in his favor.

Next, Smith accuses Sgt. Traylor of using excessive force against him. "'[T]he core judicial inquiry' 'whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019)(quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "Courts analyze (1) 'the extent of [the] injury suffered,' (2) 'the need for [the] application of force,' (3) 'the relationship between that need and the amount of force used,' (4) 'the threat reasonably perceived by the responsible officials,' and (5) 'any efforts made to temper the severity of a

forceful response.'" *Id.* (quoting *Hudson*, 503 U.S. at 7; citing *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)).

"The amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). "Courts must 'decide excessive force claims based on the nature of the force rather than the extent of the injury.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (*per curiam*)). "An inmate need not establish a 'significant injury' to pursue an excessive force claim because '[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts.'" *Id.* (quoting *Wilkins*, 559 U.S. at 37-38).

The parties largely agree as to what caused the use of force by Traylor against Smith. However, they disagree as to the degree of force Traylor used. While Traylor contends that he only used the force necessary to subdue Smith (what he describes as a "soft empty hands technique"), Smith contends that Traylor threw him down and choked him. This creates a genuine issue of fact and precludes summary judgment. Accordingly, Smith's excessive force claim against Traylor will proceed to trial.

Defendants are entitled to summary judgment on the remainder of Smith's claims. Smith's claims against Traylor and Bridges relating to the Rule Violation Report ("RVR") he received for the May 31, 2017, incident fail to establish a due process claim. "Plaintiff must show that the RVR either (1) affected or 'will inevitably affect the duration of his sentence' or (2) imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Wedgeworth v. Mississippi*, Civil Action No. 3:17-cv-730-CWR-FKB, 2018 WL 1463496, at *6

(S.D. Miss. Mar. 23, 2018)(quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)). Smith has shown neither.

Smith's claims against Warden Shaw and MTC stem from their roles as staff supervisor and employer, respectively. "'[I]ndividual liability under Section 1983 may not be predicated on the vicarious liability doctrine of *respondeat superior*.' Instead, '[o]nly the direct acts or omissions of government officials' give rise to individual liability under that statute." *Campbell v. Dykes*, Civil Action No. 3:17-cv-184-TSL-RHW, 2018 WL 6577270, at *3 (S.D. Miss. Oct. 30, 2018), *report and recommendation adopted*, 2018 WL 6544044 (S.D. Miss. Dec. 12, 2018)(quoting *Coleman v. Houston Independent School Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Smith has failed to allege any direct acts or omissions related to either the May 15 or May 30, 2017, incidents by either Shaw or MTC. To the extent he alleges that Shaw should have disciplined Walker, Smith has failed to allege the necessary "failure to train or supervise" prerequisite. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

### IV. Conclusion

For the reasons described, the Court finds that Defendants' Motion for Summary Judgment [65] should be, and is hereby, granted in part and denied in part. The motion is granted with the exception of Smith's excessive force claim against Sgt. Lonnie Traylor. The Court sets that claim for a jury trial before United States Magistrate Judge F. Keith Ball in Courtroom 5D of the Thad

Cochran United States Courthouse in Jackson, Mississippi, at 9:00 a.m. on November 18, 2019. A pretrial conference is hereby set for November 5, 2019, at 1:30 p.m. before the undersigned.

SO ORDERED, this the 24th day of September, 2019.

/s/  F. Keith Ball
UNITED STATES MAGISTRATE JUDGE